**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 22-cr-205-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

EMERY WAYNE TROMBLEY, JR.,

      Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
REVIEW MAGISTRATE COURT'S ORDER OF DETENTION AND GRANT HIM
PRETRIAL RELEASE IN ACCORDANCE WITH THE BAIL REFORM ACT**

---

Before the Court is Defendant Emery Wayne Trombley, Jr.'s Motion to Review Magistrate Court's Order of Detention and Grant Him Pretrial Release In Accordance With the Bail Reform Act ("Motion"), wherein Defendant seeks reconsideration of United States Magistrate Judge S. Kato Crews's detention order under 18 U.S.C. § 3145(b) and *United States v. Salerno*, 481 U.S. 739 (1987). (ECF No. 27.) The Government filed a response. (ECF No. 29.) Defendant filed a reply. (ECF No. 33.) For the following reasons, the Motion is granted insofar as it seeks *de novo* review of Judge Crews's detention order but denied insofar as it seeks pretrial release on bond.

## I. LEGAL STANDARD

A district court reviews *de novo* a magistrate judge's detention order. *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003); 18 U.S.C. § 3145(b). A district judge reviewing a magistrate judge's detention order may consider the evidence

presented during the original detention hearing and may permit the parties to submit new evidence.  *Cisneros*, 327 F.3d at 617.  At a detention hearing, a defendant "shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise.  The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."  18 U.S.C. § 3142(f)(2).

## II. GENERAL LAW RELEVANT TO PRETRIAL DETENTION

Under the Bail Reform Act, a defendant may be detained pending trial only if a judicial officer finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e); *id.* § 3142(b), (c).  A judicial officer may make such a finding only after holding a hearing according to the procedures specified in § 3142(f), and the government ordinarily bears the burden of proof at that hearing. The government must prove risk of flight by a preponderance of the evidence and it must prove dangerousness to any other person or to the community by clear and convincing evidence.  *See id.* § 3142(f).

"[I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," the judicial officer must consider:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—

> (A) the person's character, physical and mental
> condition, family ties, employment, financial resources,
> length of residence in the community, community ties, past
> conduct, history relating to drug or alcohol abuse, criminal
> history, and record concerning appearance at court
> proceedings; and
>
> (B) whether, at the time of the current offense or
> arrest, the person was on probation, on parole, or on other
> release pending trial, sentencing, appeal, or completion of
> sentence for an offense under Federal, State, or local law;
> and
>
> (4) the nature and seriousness of the danger to any person
> or the community that would be posed by the person's
> release.

*Id.* § 3142(g).  If, after the hearing and consideration of the above factors, a judicial

officer orders that a defendant be detained, the order must "include written findings of

fact and a written statement of the reasons for the detention."  *Id.* § 3142(i)(1); *see also*

Fed. R. App. P. 9(a)(1) ("The district court must state in writing, or orally on the record,

the reasons for an order regarding the release or detention of a defendant in a criminal

case.").

The analysis is different in part for a defendant charged with particular offenses,

such as an offense involving a minor victim.  *See id.* § 3142(e)(3).  In such cases, if the

Court finds probable cause to believe that the defendant committed the offense, then

there is a rebuttable presumption that "no condition or combination of conditions will

reasonably assure the appearance of the person as required and the safety of the

community".  *Id.*

### III. PROCEDURAL HISTORY

On June 21, 2022, an Indictment was filed, charging Defendant with one count of

Coercion and Enticement in violation of 18 U.S.C. § 2422(b); one count of Production of

Child Pornography in violation of 18 U.S.C. § 2251(a) and (e); one count of Travel with Intent to Engage in Illicit Sexual Conduct with a Minor in violation of 18 U.S.C. § 2423(b) and (f); and one count of Transportation of a Minor with Intent to Engage in Criminal Sexual Activity in violation of 18 U.S.C. § 2423(a).  (ECF No. 1.)

Defendant made his initial appearance in the Western District of Kentucky before United States Magistrate Judge H. Brent Brennenstuhl on June 20, 2022, at which time he requested that his detention hearing be conducted in the charging district.  (ECF No. 6.)  Defendant was then transported to the District of Colorado where he made his initial appearance before Judge Crews on July 26, 2022, at which time the Government moved for Defendant's detention.  (ECF No. 9.)

Judge Crews held a detention hearing on July 29, 2022.  (ECF No. 13.)  Both sides made proffers during the hearing.  (ECF No. 29-1 (transcript of detention hearing).)  The Government proffered evidence, including a recitation of the allegations that Defendant engaged in online conversations with a 13-year-old minor (hereinafter referred to as the "minor") for approximately 14 months, during which he enticed her to produce child pornography and after which he traveled to Kentucky to take the minor and bring her back to Colorado where he engaged in sexual conduct with her, while taking steps to hide his actions and evade authorities once discovered.  (*Id.* at 13–25.) To rebut the presumption of detention, Defendant offered rebuttal evidence, including his family support, mental health condition of autism, conditions in jail, and lack of criminal history.  (*Id.* at 5–13, 26–29.)

That same day, Judge Crews issued an Order of Detention, finding that while Defendant presented sufficient credible evidence to rebut the presumption based on his

4

lack of criminal history, his strong family ties within this District, and the duration of time in which he has lived within Colorado, the presumption of detention had nonetheless not been overcome.  (*Id.* at 31.)  Judge Crews specifically stated that he had considered the relevant factors, Defendant's lack of stable employment, and the nature and circumstances of the alleged offense in this case.  (*Id.* at 32.)  He observed that the circumstances included an "elaborate plan that required multiple steps to execute," which Defendant planned, and "deception along the way when stopped by law enforcement in Kansas with a cover story prepared."  (*Id.*)  He recounted that Defendant traveled back to Colorado, and when informed law enforcement was at his house, he fled to Texas.  (*Id.*)

Further, Judge Crews noted that when the minor victim in this case was kicked out of the house by Defendant's parents, Defendant was "undeterred and put yet another plan in place to smuggle this minor in and out of his home, all of this being conducted while apparently knowing the unlawfulness of his actions and his conduct with a minor."  (*Id.* at 32–33.)  Additionally, Judge Crews's conclusion was supported by the fact that although this case involved only one child, as Defendant's counsel argued at the hearing, the nature of the conduct in this case "implicates a community-wide concern and a community-wide danger . . . which is exemplified by the community-wide search in Kentucky . . . searching for this minor, based on the suicide note that was left, which was also derived from the plan that this Defendant put in place."  (*Id.* at 33.)

For these reasons, Judge Crews concluded that the Government showed that no condition or combination of conditions of release would reasonably assure the safety of the community or Defendant's presence in court and ordered Defendant detained.  (*Id.*)

## IV. ANALYSIS

The Court has reviewed the entire transcript of the detention hearing and finds

that it need not conduct a hearing on the Motion.  *See United States v. Renander*, 431

F. Supp. 3d 1240, 1242 (D. Colo. 2020) (determination of whether to hold an evidentiary

hearing is a matter of discretion for the district court) (citation omitted).  Like Judge

Crews, the Court finds that the rebuttable presumption that no condition or combination

of conditions will reasonably assure the appearance of the Defendant as required and

the safety of the community applies, because there is probable cause established by

way of the indictment to believe that Defendant has committed an offense that is

enumerated under § 3142(e)(3).  The Court also notes that Pretrial Services

recommended detention in this case.  (ECF No. 29-1 at 32.)

In the Motion, Defendant argues that the Court should release him on bond with

conditions for several reasons.  (ECF No. 27 at 5.)  Defendant explains that he was

diagnosed with autism at six years old, which necessitated an individualized education

plan for each of his school years.  (*Id.* at 9.)  According to Defendant, his autism and

other mental health issues make him particularly vulnerable during pretrial detention,

and he describes being assaulted and harassed in jail since being detained.[1]  (*Id.* at 9–

10.)  Defendant emphasizes his family ties to Colorado.  He has lived with his mother

and stepfather in Colorado for the past several years, and his father lives in Colorado.

(*Id.* at 11.)  He states that they are both home all day, are very supportive, and have

---

[1] The Government states that it takes allegations of violence in jails seriously, and these incidents should be further investigated; however, these arguments are not a basis for Defendant's release and do not fall under the factors enumerated in § 3142 to be considered in determining detention.  (ECF No. 29 at 11.)  Moreover, in his reply, Defendant states that he was transferred to another facility after he reported the assaults and explained his mental health issues and is now housed in a segregation unit.  (ECF No. 33 at 6.)

agreed to be Defendant's third-party custodians and ensure that he complies with any conditions of pretrial release.  (*Id.*)  His family has sold the car he used and removed all electronic devices Defendant used to access the internet, including his cell phone.  (*Id.*)

Defendant concedes that because of his autism, he does not have a strong employment history.  (*Id.*)  He points out that he has no criminal history.  (*Id.*) Defendant states that while the accusations against him are serious, they indicate that if he "poses any risk during pretrial release, it would involve the person at the center of the charges in this case," and he notes that he has never been accused of engaging in any inappropriate relationship with any other person.  (*Id.* at 12.)

Defendant argues that the foregoing facts rebut the presumption of detention and "definitively result in conditions of pretrial release that will ensure that [he] appears in Court when ordered and protect the community."  (*Id.*)  He suggests that the following conditions will assure his presence in court and the safety of the community:

> (1) Mr. Trombley's mother and stepfather will act as third-party custodians, they are responsible for ensuring Mr. Trombley complies with any condition of pretrial release the Court imposes; (2) Mr. Trombley is subject to home confinement, with exceptions for medical treatment (including mental health treatment), meeting with his attorney, and appearing in Court as ordered; (3) Mr. Trombley is subject to location monitoring; (4) Mr. Trombley is required to undergo mental health treatment; (5) Mr. Trombley is responsible for paying the costs of that mental health treatment[]; and (6) Mr. Trombley is prohibited from possessing any electronic device that is capable of connecting to the internet or accessing the internet, including through a third party, without prior approval of the Court.

(*Id.* at 13.)

In response, the Government asks the Court to order the continued detention of Defendant after a *de novo* review of the record.  (ECF No. 29.)  The Court will not

7

reiterate all of the Government's arguments here.

As an initial matter, the Court, like Judge Crews, finds that Defendant has presented sufficient credible evidence to rebut the presumption of detention, based on his lack of criminal history, family ties in Colorado, and the duration of time in which he has lived in Colorado.  (*See* ECF No. 29-1 at 31.)  Nevertheless, having considered the evidence in light of four factors required under the Bail Reform Act, for the following reasons, the Court finds that the Government has met its burden of showing by a preponderance of evidence that no condition or combination of conditions will reasonably assure the Defendant's attendance as required, and has met its burden of showing by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person or the community.

The Court notes that it did not reiterate every item of evidence on which Judge Crews relied in making his findings at the detention hearing in the Procedural History section of this Order; *see supra* Part III.  The Court has, however, explained Judge Crews's reasoning in great detail and, on *de novo* review, agrees with and adopts his analysis.  With this in mind, the Court examines below the four factors required by the Bail Reform Act.

## A.    Nature and Circumstances of the Offense Charged

First, the Court considers the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a minor victim.  As the Government points out, the charges against Defendant are crimes of violence under § 3142(g)(1).  (ECF No. 29 at 7.)  A "crime of violence" is defined in 18 U.S.C. § 3156(a)(4)(C) as "any felony under chapter . . . 110, or 117."  Counts One, Three, and Four of the indictment charge Defendant with crimes found in Chapter 117 of the

Criminal Code, titled "Transportation for Illegal Sexual Activity and Related Crimes," and Count Two of the indictment charges the defendant with a crime found in Chapter 110 of the Criminal Code, titled "Sexual Exploitation and Other Abuse of Children."

The offenses charged are very serious.  The evidence proffered at the detention hearing demonstrates that Defendant knew that his relationship with the minor in this case was wrong.  Specifically, the Government proffered evidence that based on some of the first messages exchanged with the minor, Defendant knew that she was only 13 years old at the time.  Nonetheless, the Government proffers that Defendant turned the conversation to a sexual nature, asked her for explicit images of her body, and discussed him coming to Kentucky where she lived to take her away with him.  (ECF No. 29-1 at 14–15.)  Over the course of no less than 14 months, Defendant communicated with the minor and exchanged pornographic videos and photos with her. (*Id.* at 16.)  The proffered evidence shows that when the minor's mother instructed her to stop speaking with Defendant, he and the minor found other ways to communicate, including using the minor's friend's phone to sign in to Snapchat and creating a Spotify playlist to share messages through the playlist titles.  (*Id.* at 17.)  The Court concludes that the proffered evidence of their communications clearly establish Defendant's dogged persistence and undaunted determination to continue the relationship with the minor, despite knowing it was improper and against her mother's wishes.

Importantly, the planning process described in the Government's proffer at the detention hearing was deliberate.  The Court understands that Defendant's counsel anticipates that "significant evaluations" concerning Defendant's mental health will be required in this case.  (ECF No. 29-1 at 6.)  While the Court will await results of a mental

health evaluation before it makes any final determination of the matter, it will note for the record here that evidence the Defendant undertook a methodical and careful course of conduct in the planning and execution of his charged criminal conduct calls into question the actual severity of his alleged mental health and cognitive impairments. For instance, when Defendant was unable to procure a driver to take him to Kentucky and back, he practiced driving in anticipation of obtaining a driver's license. (*Id.* at 18.) That Defendant was willing to go to such extremes weighs heavily in the Court's determination that he is a flight risk.

Additionally, the Government states that Defendant instructed the minor to leave her phone behind so it could not be tracked, looked at maps of Kentucky to determine how to avoid cameras, and discussed having the minor leave behind a suicide note, which Defendant reviewed to ensure the minor's parents would believe it when they read it on Christmas morning. (*Id.*) Defendant drove to Kentucky, where he was stopped on the way by Kansas police; when questioned, he was prepared with a cover story, knowing the true reasons for his journey were wrong. The Court finds that Defendant's willingness to lie to law enforcement—and that he had the wherewithal to do so—militates in favor of a finding that he is a danger to the community.

Once Defendant and the minor arrived in Colorado, they engaged in an elaborate scheme to smuggle the minor in and out of Defendant's parents' homes, which involved wrapping her in a blanket and lying to his parents. (*Id.* at 22.) Defendant's father kicked him out of the house, suspecting the minor was underage. (*Id.*) Similarly, Defendant's mother and stepfather kicked him out of their home; however, the Court notes that there is no evidence that they affirmatively took any

action to inform law enforcement of their suspicions that Defendant was engaged in a sexual relationship with a minor, though Defendant's mother did identify the minor as the child her son brought home when law enforcement came to her home.  Their extraordinarily poor judgment in this regard cripples Defendant's argument that they are suitable third-party custodians for him, if released.  (ECF No. 27 at 11.)

Defendant and the minor fled to Texas when the family informed them that the police had stopped by his parents' home.  (ECF No. 29-1 at 23.)  This trip represents the second time Defendant and the minor crossed state lines, again strengthening the Court's conclusion that Defendant is a flight risk.  On at least two occasions, he has demonstrated a willingness to flee or lie to evade law enforcement.  Given the foregoing, the Court finds that the nature and circumstances of the crimes charged strongly weigh in favor of denying the Motion.

**B.    Weight of the Evidence**

Second, the Court considers the weight of the evidence against Defendant.  The Court finds that the weight of the evidence is very strong.  According to the Government, the evidence includes over 8,000 messages sent between Defendant and the minor; pornographic images of the minor recovered from Defendant's phone; content on Defendant's phone showing e-mails and a search history reflecting his preparation for travel and steps taken to hide the minor from his family; interviews of the minor; police videos of car stops involving Defendant in Kansas, when Defendant was going to get the minor from Kentucky, and when he was stopped in Texas with the minor, after fleeing from Colorado; photos of Defendant's license plate from his trip to Kentucky; video of Defendant and the minor in a hotel in Pueblo, Colorado, as they fled to Texas; corroborative DNA evidence showing that Defendant's DNA profile is

consistent with the male DNA profile taken from the rape kit of the minor; and photos taken in Defendant's mother's home pursuant to a search warrant that corroborate the minor's disclosures.  (ECF No. 29 at 8–9.)  Given the foregoing, the Court finds that the weight of the evidence strongly supports detention.  *See United States v. Bragg*, 2021 WL 6143720, at *3 (10th Cir. Dec. 30, 2021) (rejecting defendant's argument that the district court's emphasis on the weight of the evidence was contrary to the presumption of innocence guaranteed by his right to due process and reaffirmed by 18 U.S.C. § 3142(j)).

## C.   History and Characteristics

Third, the Court considers the history and characteristics of Defendant. Defendant's lack of criminal history weighs in favor of release; however, his lack of employment weighs against it.  Defendant's financial resources are unclear from the evidence offered at the detention hearing, but they are apparently significant enough to support Defendant's travels to Kentucky and Texas with the minor, which weighs against release.

While the Defendant alleges he has been diagnosed with autism, the Court takes judicial notice that this is a diagnosis with a wide range of levels of severity.[2]   More importantly, the circumstances of the charged crimes demonstrate that despite this diagnosis, Defendant was capable of forming an online relationship with the minor, convincing her to run away with him, obtaining a driver's license, planning the journey to and from Kentucky, lying to law enforcement in Kansas about the reasons for his trip,

---

[2] *Autism Spectrum Disorder*, National Institute of Mental Health, https://www.nimh.nih.gov/health/topics/autism-spectrum-disorders-asd ("Autism is known as a 'spectrum' disorder because there is wide variation in the type and severity of symptoms people experience.") (last visited Oct. 17, 2022).

hiding the minor from his family, and fleeing to Texas to evade law enforcement. The Court agrees with the Government's assessment that Defendant's alleged "actions show a clear understanding for his actions and their illegality; a clear ability to form intent; and a clear ability to create and execute a detailed plan that involves great harm to a minor child, her family, and the community." (ECF No. 29 at 10.) All of these circumstances lead the Court to conclude that Defendant is a flight risk and a danger to the community. *See Cisneros*, 328 F.3d at 618 (defendant considered a flight risk because of her present knowledge of the seriousness of the charges against her).

Also relevant to this factor is Defendant's argument that his mother and stepfather would be reliable third-party custodians of him if released. The Court acknowledges Defendant's assertion that he has strong family ties to Colorado. (ECF No. 27 at 11.) However, those same family ties existed at the time Defendant engaged in all of the foregoing alleged conduct, and critically, at the time he and the minor fled to Texas. Based on the proffered evidence of his family's actions while Defendant and the minor were in Colorado, the Court disagrees with Defendant's assertion that his family would properly ensure his compliance with any court-imposed conditions of release.

**D.    Danger to Any Person or the Community**

Finally, the Court considers the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release. The Court incorporates by reference its findings and analysis from Part III.A. Defendant argues that the charges are specific to the single minor involved here and points out that he has never been accused of engaging in any inappropriate relationship with any other person. (ECF No. 27 at 12; ECF No. 29-1 at 28.) To the extent Defendant suggests that his targeted conduct indicates he is not a danger to *other* minors, the Court finds

his argument is unsupported.  The Court agrees with Judge Crews's observation that "the nature of the conduct here implicates a community-wide concern and a community-wide danger," exemplified by the community-wide search for the minor in Kentucky based on the suicide note that was left at least in part due to Defendant.  (ECF No. 29-1 at 33.)

Taking all four factors into consideration, the Court finds that despite a few stray facts weighing against detention (such as Defendant's lack of criminal history), the vast majority of the factors weigh in favor of pretrial detention.  There is not a combination of conditions that the undersigned could impose to provide the reasonable assurance of Defendant's attendance in court or the safety of the community.

## V. CONCLUSION

For the reasons set forth above, the Court ORDERS:

1.    Defendant Emery Wayne Trombley, Jr.'s Motion to Review Magistrate Court's Order of Detention and Grant Him Pretrial Release In Accordance With the Bail Reform Act (ECF No. 27) is GRANTED IN PART and DENIED IN PART;

2.    The Motion is GRANTED to the extent it asks the Court to review *de novo* whether Defendant should be detained pretrial but DENIED to the extent it seeks pretrial release on bond; and

3.    Defendant shall continue to be DETAINED pursuant to the conditions set forth in Judge Crews's July 29, 2022 Order of Detention (ECF No. 15).

Dated this 17th day of October, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge