**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 25-cv-3826-WJM
Criminal Case No. 22-cr-205-WJM

UNITED STATES OF AMERICA,

     Plaintiff,

v.

EMERY WAYNE TROMBLEY, JR.,

     Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255,
DISCOVERY DEMAND, AND MOTION FOR COUNSEL**

---

Before the Court is Defendant Emery Wayne Trombley, Jr.'s *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion") (ECF No. 101); and "Demand for Discovery and Inspection (Fed. R. Crim. P. 16(a))" ("Discovery Demand") (ECF No. 104). The Government filed a response addressing the Motion and Discovery Demand (ECF No. 106), to which Trombley filed a reply (ECF No. 107.) Trombley also later filed a "Motion for Appointment of Pro Bona Counsel." (ECF No. 110.)

For the following reasons, the Motion, Discovery Demand, and motion for appointment of counsel are denied.

## I.    BACKGROUND[1]

In June 2022, a grand jury returned an indictment charging Trombley with four

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

counts: (1) coercion and enticement of a minor in violation of 18 U.S.C. § 2244(b), (2) production of child pornography in violation of 18 U.S.C. § 2251(a), (3) travel with intent to engage in illicit sexual conduct in violation of 18 U.S.C. § 2423(b), and (4) transportation of a minor with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a).  (ECF No. 1.)

Trombley ultimately entered into a plea agreement with the Government pursuant to Fed. R. Crim. P. 11(c)(1)(C).  (ECF No. 54.)  Under its terms, Trombley agreed to plead guilty to count three of the indictment, and the Government agreed to dismiss the remaining counts—including count two, which would have carried with it a 15-year mandatory-minimum sentence.  18 U.S.C § 2251(e).  The parties further agreed that a sentence "not less than 120 months" was appropriate, though they disagreed on the calculation of the applicable sentencing guidelines range.  (ECF No. 54 at 2, 39–42.)  Based on its position that the appropriate guideline range was based on a total offense level of 40 under criminal history category I, the Government agreed to recommend a sentence of 292 months.  (*Id*. at 2, 41.)

After ruling on Trombley's objections to the draft presentence investigation report, the Court calculated the applicable guideline range at sentencing as 292 to 365 months, subject to the statutory maximum of 360 months.  (ECF No. 94 at 28; *see also* ECF No. 71.)  Trombley moved for a below-guideline sentence of 120 months, (ECF No. 94 at 29; *see also* ECF No. 70), while the Government asked for 292 months, consistent with the parties' plea agreement, (ECF No. 94 at 3).  After hearing the parties' arguments, the Court accepted the plea agreement, (*id.* at 101), and sentenced Trombley to 168 months, (*id.* at 121).

2

Trombley timely filed a direct appeal.  (ECF No. 85.)  The Tenth Circuit ultimately granted the Government's motion to enforce his plea agreement's appellate waiver and dismissed the appeal.  *United States v. Trombley,* No. 24-1512 (10th Cir. Apr. 17, 2025) (Doc. No. 26-1).

## II.   LEGAL STANDARD

Under 28 U.S.C. § 2255,

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a); *see also Brown v. United States,* 34 F.3d 990, 990 (10th Cir. 1994) ("Section 2255 is available to correct errors of constitutional or jurisdictional dimension, or fundamental errors which result in a complete miscarriage of justice.").

The Court must liberally construe Trombley's *pro se* Motion, but it is "not required to fashion [Trombley's] arguments for him where his allegations are merely conclusory in nature and without supporting factual averments."  *United States v. Fisher,* 38 F.3d 1144, 1147 (10th Cir. 1994) (citing *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991)).

## III.   ANALYSIS

### A.   Trombley's Reply

As a preliminary matter, the Court takes note that Trombley filed a reply nearly a month after the Court-ordered filing deadline, which, at 25 pages, also far exceeds this Court's prescribed 15-page limit.  (*See* ECF Nos. 102, 107.)  *See also* WJM Rev. Prac.

Standard III.C.1. What's more, Trombley's reply raises various additional claims of ineffective assistance of trial counsel, ineffective assistance of appellate counsel, "misuse for a social worker," and "failure to return searched and seized property" that were not previously asserted in the Motion. (*See e.g.,* ECF No. 107 at 16.)

In consideration of Trombley's *pro se* status, the Court will accept the reply despite its untimeliness and failure to comply with the Court's page limits. It will not, however, consider entirely new claims raised for the first time in a reply brief. *See* Rule 2(c) of the Rules Governing Section 2255 Proceedings ("The motion must . . . specify *all* the grounds for relief available to the moving party."); *United States v. Cook,* 2024 WL 4052867, at *4 n.2 (10th Cir. Sept. 5, 2024) (concluding "[t]he district court acted within its discretion in declining to address" "additional claims of ineffective assistance of trial counsel" raised in reply). Accordingly, the Court will consider any additional argument and factual averments set forth in the reply to the extent they support the ineffective assistance of counsel ("IAC") claims Trombley originally asserted in the Motion, but it declines to address any novel claims.

With these parameters in mind, the Court proceeds to the merits of the Motion.

**B.    Ineffective Assistance of Trial Counsel**

Trombley's Motion asserts ineffective assistance of trial counsel on four grounds. (*See generally* ECF No. 101.) To establish an IAC claim, Trombley must satisfy the two-prong test set out in *Strickland v. Washington.* 466 U.S. 668, 687–88 (1984). The Court may address these prongs "in any order, and failure under either is dispositive." *United States v. Barrett,* 797 F.3d 1207, 1214 (10th Cir. 2015) (citation omitted).

First, Trombley must show his counsel's "performance fell 'below an objective standard of reasonableness.'" *Meadows v. Lind,* 996 F.3d 1067, 1074 (10th Cir. 2021)

4

(quoting *Strickland,* 466 U.S. at 687).  A court's "review of counsel's performance under the first prong of *Strickland* is a 'highly deferential' one."  *Byrd v. Workman,* 645 F.3d 1159, 1168 (10th Cir. 2011) (citation omitted).  "When evaluating a trial counsel's performance, [courts] must presume the counsel 'to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Meadows,* 996 F.3d at 1074 (citation omitted).  Thus, "[t]o be constitutionally deficient, the counsel's performance 'must be outside the wide range of professionally competent assistance."  *Id.* at 1075 (citation omitted).  The defendant "must show that counsel's performance was completely unreasonable, not simply wrong."  *Fox v. Ward,* 200 F.3d 1286, 1295 (10th Cir. 2000).

Second, Trombley must show that his counsel's "deficient performance prejudiced the defense.'"  *Meadows,* 996 F.3d at 1074 (quoting *Strickland,* 466 U.S. at 688).  "[P]rejudice is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Meadows,* 996 F.3d at 1075 (quoting *Weaver v. Massachusetts,* 582 U.S. 286, 300 (2017)).  "In the context of guilty pleas, . . . the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart,* 474 U.S. 52, 58–59 (1985).

Applying this framework, the Court considers each of Trombley's asserted grounds of IAC in turn.

### 1.    Lack of Communication

Trombley first claims his "appointed counsel . . . failed to communicate with [him] in all aspects of the case" and "fail[ed] to inform [him] of new information."  (ECF No. 101 at 4.)  The Motion fails to provide any further factual support.  However, Trombley

elaborates in his reply that, "if [he] had a question, the counsel appointed to him had promised to answer them during attorney-visitation," but on some or all occasions a social worker would attend visitation instead.  (ECF No. 107 at 4.)  He also adds that his counsel "failed to communicate with [him] before any motion or decision is made," and specifically notes his counsel's failure to "inform . . . or consult[] with [him] about filing for continuance throughout the case . . . ."  (*Id.*)

The Court does not read the Motion to articulate a colorable claim that there was a "complete breakdown in communication" between Trombley and his attorney, in which case a "presumption of ineffectiveness" might arise.  *United States v. Holloway,* 939 F.3d 1088, 1097–98 (10th Cir. 2019) (internal citations and quotation marks omitted).  "Conflict that results in a total breakdown of communication exists where the defendant and counsel could not, in any manner, communicate."  *Id.* at 1099.  On the other hand, "certain contacts between a defendant and counsel can establish that no complete breakdown in communication occurred."  *Id.*

Throughout his briefing, Trombley refers, either directly or implicitly, to multiple instances where he clearly did have direct contact with his appointed counsel.  (*See, e.g.,* ECF No. 107 at 2 ("defense counsel has ceased . . . correspondance [*sic*] with the defendant after a second legal call on April 2, 2025," four months after sentencing); *id.* at 4 ("defense counsel . . . only allowed for less than an hour" for discovery "to be reviewed under the appointed counsels supervision"); *id.* at 6 ("based on what the defendant was promised by his appointed counsel, he was given the raw end of the deal").)  In any event, the record conclusively demonstrates that Trombley never brought any purported conflict with his counsel to the Court's attention through a motion

6

for new or substitute counsel, which all but entirely forecloses a claim of IAC based on a complete breakdown in communication.  *See Romero v. Furlong,* 215 F.3d 1107, 1113 (10th Cir. 2000) (instructing courts to first consider "whether [the petitioner] made a timely motion requesting new counsel").

To the extent Trombley's allegations are better read to assert that his attorney rendered ineffective assistance by failing to communicate or consult with him in specific instances, such as before filing a motion for a continuance, Trombley also has not explained how he was prejudiced by those failure(s)—even assuming they constitute deficient performance.  Indeed, Trombley has not even alleged, for example, that he would have objected to his counsel seeking a continuance, much less that there is a reasonable probability of a different outcome had a continuance not been sought.  *Cf. United States v. Washington,* 2026 WL 878709, at *10 (D. Colo. Mar. 31, 2026) (defendant's vague allegations regarding her counsel's absence during certain stages of the trial and general lack of communication were insufficient to demonstrate IAC). Notably, Trombley alludes to the fact that the plea deal he ultimately accepted was the Government's fourth offer.  (ECF No. 107 at 16.)  The Court thus surmises that, if anything, the three continuances defense counsel obtained enabled him to negotiate more favorable plea terms.  (ECF Nos. 20, 37, 40.)

Accordingly, Trombley has failed to demonstrate either that a complete breakdown in communication rendered his counsel's representation constitutionally ineffective, or that he was prejudiced by his counsel's alleged failure to communicate on any specific occasion.

2.    <u>Withholding Discovery</u>

Trombley next asserts that his counsel was unwilling to let him "see the discovery

7

in a self-paced manner," that "no discovery [was] given to [him] to investigate during pretrial," and that his trial counsel is now "refusing to lend discovery postconviction which is getting in the way of any legal remedys [*sic*] being worked on . . . ."  (ECF No. 101 at 5.)  In its response, the Government points out that the Court entered a protective order at the outset of the case precluding any "discovery materials that disclose the name or any other information concerning a minor" from being shared with Trombley outside the presence of defense counsel or other members of the defense team.  (ECF No. 106 at 5 (citing ECF No. 18 at 3).)

Trombley appears to acknowledge that his counsel informed him of the protective order in his reply, in stating "[c]ounsel has not mention any protection order from reviewing the discovery, only any mention of a protection order was of having any information regarding the minor listed as the alleged victim."  (ECF No. 107 at 4.)  But he says "defense counsel did not permit [him] to review the discovery, and only allowed for less than an hour to be reviewed under the appointed counsels supervision."  (*Id.*)  He also complains that his appointed counsel is still "refusing to allow [him] to have possession of content from the discovery without a protection order or discovery with redacted information from that protection order."  (*Id.*)

Trombley's assertion that his counsel performed deficiently by failing to turn over discovery for him to review at his own pace partly fails at the outset for a few reasons.  First, in light of the protective order, Trombley cannot blame his counsel for failing to provide him with a complete set of discovery to review in a "self-paced manner."  (ECF No. 101 at 5.)  Second, and in the same vein, Trombley's counsel cannot perform deficiently by failing to provide him with "discovery" that is not in the attorney's control,

including, for example, "court transcripts." (*See, e.g.,* ECF No. 107 at 4.) Finally, because there is no constitutional right to counsel beyond a direct appeal, *Coronado v. Ward,* 517 F.3d 1212, 1218 (10th Cir. 2008), Trombley "may not assert ineffective assistance of counsel based on his attorney's performance representing [him] in his post-conviction claims," *United States v. Williams,* 2021 WL 1056534, at *2 (D. Kan. Mar. 19, 2021).

Even assuming, however, that defense counsel performed deficiently by failing to provide Trombley with any discovery not subject to the protective order prior to sentencing, Trombley still has not shown he was prejudiced. Trombley alleges that "[t]here was more evidence and information within the mitigation," and thus that "there could've been a probability that [he] would've token [*sic*] the case to trial if he was given the e-discovery in his possession to review it during pretrial detention . . . ." (ECF No. 107 at 3.) But as Trombley appears to recognize in his briefing, mitigating evidence is relevant to the Court's consideration of an appropriate sentence. (*See id.*) It is less likely to have been relevant to Trombley's guilt or innocence of the charged offenses, which would have been the only question before the jury at trial. Thus, Trombley's belief that he could have identified additional mitigating evidence had he been provided with discovery to review in a "self-paced manner" does not, in the Court's view, demonstrate a reasonable probability he would have proceeded to trial in lieu of accepting a plea deal.

### 3.    Failure to Introduce Favorable Evidence

Third, Trombley contends his counsel "failed to introduce favorable evidence in courtroom, camera, or on open record, likely hiding the evidence." (ECF No. 101 at 7.) He seems to clarify in his reply that his defense counsel did not sufficiently emphasize

at sentencing "the defendant's capacity in mitigating factors regarding his intellectual disability" and "capacity as far as age-of-consent, child pornography, Trombley's social and mental-health history, and how correctional treatment can make all of that worse upon the defendants release from prison after his sentence . . . ."  (ECF No. 107 at 5.) Trombley claims this "influenced the courts [*sic*] decision, and helping [*sic*] the prosecutor in her case against [him] . . . ."  (ECF No. 101 at 7.)

Trombley does not explain what specific "favorable information" he believes his defense counsel failed to introduce.  In any event, the Court rejects out of hand any contention that Trombley's defense counsel did not vigorously argue mitigating factors at sentencing.  Much to the contrary, defense counsel submitted what the Court described at the time as "a simply astronomical and eye-watering 127 PAGES" of objections to the draft presentence investigation report.  (ECF No. 67.)  Moreover, the Court rejected defense counsel's motion to call two expert witnesses at sentencing to further testify to Trombley's autism and intellectual disability disorder, considering it had already "allow[ed] Defendant to file 2,215 pages of sentencing-related filings and associated exhibits" and thus had "far more than it needs . . . to determine a fair and just sentence . . . ."  (ECF No. 79.)  The sentencing transcript further evidences the significant attention devoted at sentencing to Trombley's neurocognitive impairments in determining a proportionate sentence.  (*See, e.g.,* ECF No. 94 at 88–89, 102, 104–05.)

In short, Trombley's contention that his counsel performed deficiently in presenting mitigating evidence at sentencing is conclusively belied by the record.

4. <u>Failure to Advise on Sentence Exposure</u>

Trombley next claims his counsel was ineffective in failing to advise him on "the possible outcome that the judge would max [his] sentencing guidelines and . . .

10

disregard all the factors of the offense without considering the 18 U.S.C. § 3553(a) factors." (ECF No. 101 at 8.) In his reply, Trombley also suggests his counsel advised him that "the court would likely reject the Rule 11(c)(1)(C) because it doesn't leave the court any room to make discretionary impositions by the ten-year floor that is hindering the court from sentencing below that." (ECF No. 107 at 6.) Moreover, he asserts his counsel failed to "assert[] any objections to the cross-reference [sentencing] enhancement" and "failed to make proper efforts to make psychological evaluations to prove [his] culpability to be lesser than alleged to be . . . ." (ECF No. 101 at 8.)

Trombley's assertions are, again, wholly belied by the record. In advance of sentencing, Trombley's defense counsel submitted two psychological evaluations, (ECF Nos. 70-4, 70-5), and filed thorough objections to the draft presentence investigation report, including objections to the application of certain sentencing enhancements, (ECF No. 66, 67, 71). Though the Court ultimately overruled some of those objections at sentencing, it also accepted probation's decision to drop an enhancement based on a defense objection. (ECF No. 94 at 10.) It accordingly did not "max" the guidelines. In any event, the Court ultimately sentenced Trombley well below the applicable guideline range and, in so doing, extensively and exhaustively considered the § 3553(a) factors when fashioning its downward variant sentence. (ECF No. 94 at 101–121.)

Even assuming, however, that Trombley's counsel incorrectly advised him on the potential sentencing guideline range, he has not shown that he has been prejudiced as a result. A defendant generally is not prejudiced by counsel's "erroneous advice" when he is "correctly informed" by the court or other sources. *Schumacher v. Ortiz,* 406 F. App'x 290, 293 (10th Cir. 2010). The plea agreement Trombley executed memorialized

11

the parties' disagreement as to the appropriate guideline calculation and further advised that the parties' calculations were "only an estimate."  (ECF No. 54 at 40–43.)  Trombley also certified in advance of his guilty plea that he knew the Court would consider many factors when sentencing him, that it was ultimately "possible that the Court could, after considering these factors, impose any sentence . . . ."  (ECF No. 55 at 1–2.)  At his change of plea hearing, the Court likewise confirmed Trombley's understanding that he faced a maximum sentence of 30 years' imprisonment and that, if the Court accepted the plea agreement, it would "have no discretion to decrease [his] sentence below 120 months . . . ."  (ECF No. 93 at 20–21.)  Thus, Trombley was well advised of the consequences he faced under the plea agreement.

### 5. Judicial Bias and/or Bias of Counsel

Under the fourth ground of his Motion, Trombley also claims, somewhat unrelatedly, that his counsel "failed to mention the attitude and prejudice and bias intent towards [him]."  (ECF No. 101 at 8.)  Though it is unclear in the Motion, the Court reads Trombley's reply to refer to biases harbored by both the Court and his counsel.

Trombley asserts "[t]he court has shown biasness towards the defendant . . . based on the nature of his conviction . . . and the imposition of [a] sentence . . . based o[n] prejudgement and misjudgement [*sic*]."  (ECF No. 107 at 6.)  He remarks that "the court . . . has given deportee's, drug or narcotic offenders more leniency."  (*Id.*)  This is not a claim of ineffective assistance of counsel but instead of judicial bias.  And "[a]dverse rulings alone do not demonstrate judicial bias," to the extent the sentence Trombley received can even be described as such.  *Bixler v. Foster,* 596 F.3d 751, 762 (10th Cir. 2010).

As for the alleged bias of his defense counsel, Trombley avers his counsel has

12

"shown impartiality [*sic*] towards the defendant based [on] his opposition for the defendant voting republican instead of democrat on the 2025 presidential campaign . . . ." (ECF No. 107 at 10.)  He contends this alleged political bias has borne out through his counsel "slowly ceas[ing] correspondance [*sic*] with him" and "show[ing] prejudice from post-conviction relief remedies . . . ." (*Id.*)  Considering that the 2024 presidential election roughly coincided with Trombley's sentencing in early December 2024, the reduced communications from defense counsel are perhaps more reasonably explained by the conclusion of Trombley's criminal proceedings.  In any event, the Court reiterates that Trombley "may not assert ineffective assistance of counsel based on his attorney's performance representing [him] in his post-conviction claims."  *United States v. Williams,* 2021 WL 1056534, at *2 (D. Kan. Mar. 19, 2021).

*****

In sum, each of Trombley's IAC claims lack merit, and the Motion is thus denied.

## C.    Procedural Matters

Before concluding, the Court considers a few procedural matters.

"A petitioner for habeas relief is entitled to an evidentiary hearing on a §2255 motion '[u]nless the motion and the files and records of the case conclusively show that [he] is entitled to no relief.'" *United States v. Gallegos,* 459 F. App'x 714, 716 (10th Cir. 2012) (quoting 28 U.S.C. § 2255(b)).  A § 2255 petitioner is also entitled to an evidentiary hearing when there is a disputed factual issue.  *Id.* at 716–17*; see also Anderson v. Atty. Gen. of Kan.,* 425 F.3d 853, 860 (10th Cir. 2005) ("The purpose of an evidentiary hearing is to resolve conflicting evidence.").  Trombley does not request an evidentiary hearing, and the Court finds that the files and records of this case conclusively demonstrate Trombley is not entitled to relief on his IAC claims such that

13

an evidentiary hearing is not necessary.

Though Trombley did not expressly request an evidentiary hearing, he did file a separate Discovery Demand.  (ECF No. 104.)  The Government points out that Trombley's Discovery Demand is directed at his counsel and the Government.  (ECF No. 106 at 7.)  In that regard, it does not appear to ask the Court for relief.  Even assuming, however, that Trombley does seek relief from the Court, he has not demonstrated good cause for discovery in these § 2255 proceedings.

Trombley's Discovery Demand cites Fed. R. Crim. P. 16(a).  (ECF No. 104 at 1.)  However, Rule 6 of the Rules Governing 2255 Proceedings governs here.  That rule provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law."  Rule 6(a).  In order to show "good cause," a petitioner must provide the court with "specific allegations [that] show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."  *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)); *LaFevers v. Gibson*, 182 F.3d 705, 723 (10th Cir. 1999).  Trombley has not detailed any specific allegations that give the Court good cause to believe he may, with discovery, be able to demonstrate he is entitled to relief.  His Discovery Demand is accordingly denied.

Finally, the Court considers Trombley's motion for appointment of counsel.  (ECF No. 110.)  As the Court has already twice noted herein, "[t]here is no constitutional right to counsel to litigate a § 2255 motion."  *United States v. Hunt,* 2018 WL 10215838, at *2 (D. Colo. Sept. 24, 2018) (citing *Penn. v. Finley,* 481 U.S. 551, 555 (1987); *Swazo v.*

14

*Wyo. Dep't of Corr.,* 23 F.3d 332, 333 (10th Cir. 1994)).  Thus, the appointment of counsel is required only where an evidentiary hearing is warranted or when necessary for effective discovery.  *See* Rules 6(a), 8(c).  Neither circumstance is attendant here.

The Court may also, in its discretion, appoint counsel when "the interests of justice so require" for a movant seeking relief under § 2255 who is "financially unable to obtain adequate representation."  18 U.S.C. § 3006A(a)(2)(B).  Trombley's briefs and the record conclusively demonstrate that he is not entitled to relief under § 2255. Accordingly, the interests of justice do not require appointment of counsel.

## IV.    CONCLUSION

For all the foregoing reasons, the Court ORDERS as follows:

1.      Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 101) is DENIED;

2.      Defendant's "Demand for Discovery and Inspection (Fed. R. Crim. P. 16(a))" is DENIED;

3.      Defendant's "Motion for Appointment of Pro Bona Counsel" (ECF No. 110) is DENIED;

4.      The Court has *sua sponte* considered whether a certificate of appealability is appropriate, and hereby ORDERS that no certificate of appealability will issue because Defendant has not made a substantial showing that jurists of reason would find it debatable whether the Motion states a valid claim of the denial of a constitutional right; and

5.      The Court will enter a separate judgment closing the civil habeas case.

Dated this 10th day of July, 2026.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge